IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CR-316-D
No. 5:20-CV-20-D

CHAD ERIC NUTSCH,           )
                            )
                Petitioner, )
                            )
        v.                  )           **ORDER**
                            )
UNITED STATES OF AMERICA,   )
                            )
                Respondent. )

On January 20, 2020, Chad Eric Nutsch ("Nutsch") moved under 28 U.S.C. § 2255 to vacate, set aside, or correct his 24-month sentence [D.E. 102]. On June 29, 2020, the government moved to dismiss Nutsch's motion [D.E. 112] and filed a memorandum in support [D.E. 113]. On July 24, 2020, Nutsch replied [D.E. 116]. On September 8, 2020, Nutsch moved pro se for compassionate release [D.E. 121]. As explained below, the court grants the government's motion to dismiss, dismisses Nutsch's section 2255 motion, and denies Nutsch's motion for compassionate release.

I.

From May 2012 through November 2015, Nutsch was a drug trafficker and distributed more than 200 kilograms of marijuana in North Carolina. See Presentence Investigation Report ("PSR") [D.E. 37] ¶ 14. On February 5, 2018, Nutsch pleaded guilty to conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h) [D.E. 1, 22, 95]. The money laundering conspiracy concerned Nutsch's drug proceeds. See [D.E. 1, 22, 95]. On July 25, 2019, the court held Nutsch's sentencing hearing and calculated Nutsch's advisory guideline range to be 46 to 57 months' imprisonment. See Sent. Tr. [D.E. 96] 5. After granting the government's downward departure

motion and considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Nutsch to 24 months' imprisonment. See id. at 7–19.

Nutsch appealed [D.E. 86]. On November 21, 2019, the United States Court of Appeals for the Fourth Circuit granted Nutsch's motion to voluntarily dismiss the appeal [D.E. 97].

In Nutsch's section 2255 motion, Nutsch argues that he received ineffective assistance of counsel because (1) counsel failed to correct information about when Nutsch began to conspire with Angelina Parra to launder money from his drug trafficking; and (2) counsel failed to make a stronger mitigation case at sentencing based on the First Step Act. See [D.E. 102]; [D.E. 103] 7–11.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests a complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In reviewing a section 2255 motion, the court is not limited to the motion itself. The court may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Likewise, a court may rely on its own familiarity with the case. See,

2

e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977); United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013).

The "Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (quotations omitted). The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding, including plea negotiations, trial, sentencing, and appeal. See, e.g., Lafler v. Cooper, 566 U.S. 156, 164–65 (2012); Missouri v. Frye, 566 U.S. 134, 140 (2012); Glover v. United States, 531 U.S. 198, 203–04 (2001). "[S]entencing is a critical stage of trial at which a defendant is entitled to effective assistance of counsel, and a sentence imposed without effective assistance must be vacated and reimposed to permit facts in mitigation of punishment to be fully and freely developed." United States v. Breckenridge, 93 F.3d 132, 135 (4th Cir. 1996); see Glover, 531 U.S. at 203–04. To state a claim of ineffective assistance of counsel in violation of the Sixth Amendment, Nutsch must show that his attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687–91 (1984).

When determining whether counsel's representation was objectively unreasonable, a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. A party also must show that counsel's deficient performance prejudiced the party. See id. at 691–96. A party does so by showing that there is a "reasonable probability" that, but for the deficiency, "the result of the proceeding would have been different." Id. at 694.

3

When a defendant pleads guilty and later attacks his guilty plea, "to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see Lee v. United States, 137 S. Ct. 1958, 1967 (2017). "Surmounting Strickland's high bar is never an easy task, and the strong societal interest in finality has special force with respect to convictions based on guilty pleas." Lee, 137 S. Ct. at 1967 (quotations and citations omitted).

During Nutsch's Rule 11 proceeding, Nutsch swore that he understood the charge to which he was pleading guilty. See Rule 11 Tr. [D.E. 95] 1–14. Nutsch also swore that he had discussed his case with his lawyer and was fully satisfied with his lawyer's legal services. See id. at 16–17. Nutsch also swore that he understood that the court could sentence him up to the statutory maximum for the count of conviction, and that if the court did so, Nutsch could not withdraw his guilty plea. See id. at 1–14, 20–22.

Nutsch's sworn statements at his Rule 11 proceeding bind him. See, e.g., Blackledge, 431 U.S. at 74; United States v. Moussaoui, 591 F.3d 263, 299–300 (4th Cir. 2010); United States v. LeMaster, 403 F.3d 216, 221–23 (4th Cir. 2005). Those sworn statements show that Nutsch admitted to committing the count of conviction. Accordingly, Nutsch has not plausibly alleged "that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; see Lee, 137 S. Ct. at 1967–69; Hill, 474 U.S. at 59; Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992). Thus, to the extent Nutsch seeks to invalidate his guilty plea, Nutsch cannot show prejudice from the alleged error concerning the failure to correct information about Angelina Parra, and the claim fails.

Alternatively, the claims fail concerning counsel's performance at sentencing. Defense counsel's performance at sentencing was adequate and falls within the wide range of professional performance. Nutsch admitted under oath at the Rule 11 hearing that he engaged in the charged money laundering conspiracy. Moreover, the charged money laundering conspiracy was not limited solely to a conspiracy with Angelina Parra, and the AUSA's factual basis and the PSR made clear that the marijuana trafficking began in 2012 and that the money laundering conspiracy included but was not limited to Parra. See PSR ¶¶ 7–14; Rule 11 Tr. 22–24. Counsel acted appropriately in light of the discovery and the information that Nutsch provided counsel about Nutsch's drug trafficking and money laundering. See, e.g., Strickland, 466 U.S. at 691 ("The reasonableness of counsel's action may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant."). Likewise, the record belies Nutsch's argument concerning defense counsel's mitigation argument. Counsel made as strong of a mitigation argument as possible. See, e.g., [D.E. 52] 2–17. Although Nutsch is disappointed that the court declined to vary dramatically and impose a non-custodial sentence, counsel did not perform deficiently.

Alternatively, Nutsch has not plausibly alleged prejudice concerning counsel's performance at sentencing. To prove prejudice from deficient performance at sentencing, a defendant must prove a reasonable probability that the defendant would have been sentenced differently if the error had not occurred. See Sears v. Upton, 561 U.S. 945, 955–56 (2010); United States v. Carthorne, 878 F.3d 458, 469–70 (4th Cir. 2017). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In light of this court's extensive discussion of the section 3553(a) factors, Nutsch has not plausibly alleged that counsel could have done

5

something differently to obtain a different sentence for Nutsch. Moreover, this court's alternative variant sentence defeats any claims that counsel's performance at sentencing prejudiced Nutsch. See Molina-Martinez v. United States, 136 S. Ct. 1338, 1345–47 (2016); United States v. Feldman, 793 F. App'x 170, 173–74 (4th Cir. 2019) (per curiam) (unpublished); United States v. Gomez-Jimenez, 750 F.3d 370, 382–86 (4th Cir. 2014); United States v. Hargrove, 701 F.3d 156, 160–65 (4th Cir. 2012). Thus, Nutsch has not plausibly alleged prejudice. See Sears, 561 U.S. at 956; Strickland, 466 U.S. at 689–700.

After reviewing the claims presented in Nutsch's motion, the court finds that reasonable jurists would not find the court's treatment of Nutsch's claims debatable or wrong and that the claims do not deserve encouragement to proceed any further. Accordingly, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

II.

As for Nutsch's pro se motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1), Nutsch relies on the health of his family members, COVID-19, and his own health. [D.E. 121]. On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. 5194, 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

6

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission ("Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of another person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

      (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

7

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or

---

        (ii) The defendant is—

            (I) suffering from a serious physical or medical condition,

            (II) suffering from a serious functional or cognitive impairment, or

            (III) experiencing deteriorating physical or mental health because of the aging process,

        that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

  (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

  (C) Family Circumstances.—

        (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

        (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

  (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. McCoy, No. 20-6821, 2020 WL 7050097, at *6–10 (4th Cir. Dec. 2, 2020. Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(I). See, e.g., id. at *9. In doing so, the court may consult not only U.S.S.G. § 1B1.13, but independently assess the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., id.; United States v. Gunn, No. 20-1959, 2020 WL 6813995, at *2 (7th Cir. Nov. 20, 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d. 228, 237–38 (2d. Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

The court assumes without deciding that Nutsch has exhausted all administrative remedies, or alternatively that the warden received Nutsch's compassionate release request and 30 days have elapsed from receipt. See 18 U.S.C. § 3582(c)(1)(A).[2] As for the medical condition of the defendant

---

[2] The United States Court of Appeals for the Fourth Circuit has not addressed whether section 3582's exhaustion requirement is a jurisdictional or claims processing requirement. The court assumes without deciding that the requirement is a claims-processing rule, and that the government must "properly invoke" the rule for this court to enforce it. See United States v. Alam, 960 F.3d 831, 833–34 (6th Cir. 2020).

9

policy statement, Nutsch has not stated that he suffers from any medical condition from which he is not going to recover. Accordingly, releasing Nutsch or reducing Nutsch's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the family circumstances policy statement, Nutsch contends that this court should release him to assist his parents. See [D.E. 121] 1. According to Nutsch, he is "the only caregiver for his mother and step-father." See id. at 2.

Nutsch has failed to prove that his mother and step-father are incapacitated within the meaning of application note 1 of U.S.S.G. § 1B1.13. In any event, Nutsch's mother and stepfather are not his children or spouse. Thus, Nutsch fails to meet the "family circumstances" policy statement, and the court denies his request for release to care for his mother and step-father.

As for the "other reasons" policy statement, Nutsch cites COVID-19 and claims he was diagnosed with asthma at age nine and has major depressive disorder. See [D.E. 121] 3. Nutsch, however, has not documented these alleged conditions. In any event, they do not rise to the level of extraordinary and compelling reasons under section 3582(c)(1)(A) alone or in combination with COVID-19. Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

Alternatively, even if Nutsch has shown extraordinary and compelling reasons under section 3582(c)(1)(A), the section 3553(a) factors counsel against reducing Nutsch's sentence. See United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8. Nutsch engaged in serious criminal conduct for a three–year period. See PSR ¶¶ 7–14. To reduce his sentence would mock this court's careful assessment of the section 3553(a) factors at sentencing.

10

In making this finding, the court acknowledges that Nutsch has taken some positive steps while incarcerated. See [D.E. 121-9]; cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011). Nonetheless, having considered the entire record, the steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Nutsch's arguments, and the need to punish Nutsch for his criminal behavior, to incapacitate Nutsch, to promote respect for the law, to deter others, and to protect society, the court declines to grant Nutsch's motion to be released. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished).

### III.

In sum, the court GRANTS the government's motion to dismiss [D.E. 112], DISMISSES Nutsch's section 2255 motion [D.E. 102], DENIES a certificate of appealability, and DENIES Nutsch's motion to be released [D.E. 121]. The clerk shall close the case.

SO ORDERED. This 16 day of December 2020.

JAMES C. DEVER III
United States District Judge